IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **UNITED STATES OF AMERICA** )<br>)<br>**v.** )<br>)<br>)<br>**MICHAEL BROWN, JR., a.k.a. "Russ,"** )<br>)<br>)<br>)<br>**Defendant.** ) | Criminal No.   1:23-cr-00061-BKS<br><br><br>**GOVERNMENT'S   SENTENCING<br>MEMORANDUM** |

The United States of America, by and through its counsel of record, the United States Attorney for the Northern District of New York, hereby requests that the Court sentence the defendant Michael Brown, Jr. according to the Sentencing Guidelines, to include a low-end Guideline term of imprisonment, followed by three years of supervised release. Such a sentence would be sufficient, but not greater than necessary, to comply with the sentencing factors set forth in 18 U.S.C. § 3553(a).

**I.    FACTUAL BACKGROUND[1]**

On June 23, 2023, the defendant pled guilty, pursuant to a plea agreement, to the indictment charging Conspiracy to Commit an Armed Bank Robbery, in violation of 18 U.S.C. §§ 371, 2113(a), (d). Dkt. 27 (Indictment); Dkt. 52 (Plea Agreement).

In pleading guilty, Brown admitted that between November 14 and November 27, 2022, he agreed to and planned to commit an armed bank robbery at a bank branch in Johnstown, New York, with two co-conspirators, Luke Kenna a.k.a. "Lt.," and Brian Tierney a.k.a. "Wodanaz." Dkt. 52 at 3-4. The conspiracy was formed on November 14 when Kenna created a chat labeled

---

[1] The United States adopts the facts contained in the Presentence Investigation Report prepared by the U.S. Probation Office, which in turn relied upon law enforcement reports and related discovery provided by the United States.

1

the "ᛋᛋ [SS] Screenwriters Guild," which Brown and Tierney joined. *Id.* During the conspiracy, Kenna conducted surveillance and photographed the bank on November 21, 2022, and on November 26, 2022, Brown drove to New York from Pennsylvania to conduct surveillance of the bank with Kenna. *Id.*

As part of the conspiracy, Brown and his conspirators planned to use firearms and other weapons to rob the bank by force and intimidation. For example, on November 17, 2022, Kenna sent to Brown a chat message, "I have one clean p80, can you procure 2 more for the play?" referring to a Polymer 80, a type of Glock-style handgun, that they planned to use, to which Brown responded, "Copy. I'll work on the p80s." PSIR ¶ 40. Likewise, on November 21, 2022, Kenna sent photographs showing the outside of the targeted bank in Johnstown, to which Brown soon replied, referring in coded language to obtaining and using firearms during the robbery, "Copy on all. I am working on acquiring a heavier prop [i.e., a firearm] for this movie as well for my part. If something goes sides ways and we decide to turn this into an action thriller [i.e., a shootout] I'd prefer to have something really nice for the audience." PSIR ¶ 46. When Brown's residence was searched in December 2022, the FBI found multiple phones, numerous edged weapons and knives, firearm parts, including rifle scopes and firearm magazines, assorted ammunition, smoke and paint grenades, zip ties, various ballistic vests, a radio jammer, and a black ski mask. PSIR ¶¶ 54-55.

Brown, like his two conspirators, had a professed allegiance to white-supremacist and Nazi ideologies, and was a member of the Patriot Front,[2] though Brown has since purportedly disavowed any affiliation with any extremist groups. PSIR ¶¶ 21, 60-62.

The defendant has been detained since his arrest on December 14, 2022. PSIR ¶ 6.

---

[2] According to the Anti-Defamation League, the Patriot Front is a white supremacist group whose members maintain that their ancestors conquered America and bequeathed it to them and no one else. PSIR ¶ 21 n. 6.

II. **APPLICABLE STATUTORY AND GUIDELINES PROVISIONS**

    a. **Statutory Provisions**

Count 1 is a Class D felony that carries a maximum term of imprisonment of 5 years, a maximum fine of $250,000, and a term of post-imprisonment supervised release of up to three years. 18 U.S.C. §§ 371, 3571(b), 3583(b)(2). A special assessment of $100 must also be imposed under 18 U.S.C. § 3013.

    b. **Guidelines Provisions**

        i. **Criminal History Category**

The United States agrees with Probation that Brown has a total criminal history score of two, which establishes a criminal history category of II. PSIR ¶ 84.

        ii. **Offense Level Computation**

The United States agrees with the Probation Office's offense level computation, including the application of two upward adjustments because the object of the offense was a financial institution, and because the intended offense involved the possession and/or brandishing of a firearm. PSIR ¶¶ 64-75. The United States also agrees that a decrease in the offense level is warranted because the conspiracy was not completed. PSIR ¶ 67.

The United States agrees with Probation that the defendant is entitled to a two-level downward adjustment of the offense level for acceptance of responsibility pursuant to USSG § 3E1.1(a), and hereby moves for an additional one-level downward adjustment pursuant to USSG § 3E1.1(b) to credit the defendant for timely notifying authorities of his intention to enter a plea of guilty. PSIR ¶¶ 73-74.

As a result, the government agrees that the total offense level should be 21, before the application of any other adjustment or downward departure. PSIR ¶ 75.

    c. Guidelines Calculations

The Government agrees with the Probation Office's guideline calculations. Based upon a total offense level of 21, and a criminal history category of II, before any other adjustment or departure, the Guidelines recommend 41 to 51 months of imprisonment, between 1 and 3 years of supervised release, and a fine between $15,000 to $150,000. PSIR ¶¶ 101, 105, 110.

## III. GOVERNMENT'S SENTENCING RECOMMENDATION

The United States requests that the Court sentence the defendant according to the Sentencing Guidelines, including a term of imprisonment on the low-end of the applicable Guideline range, and three years of post-imprisonment supervised release.

Based on his apparent inability to pay, the government does not recommend that the Court impose a fine. *See* PSIR ¶ 99; U.S.S.G. § 5E1.2(a) (fine may be waived where "defendant establishes that he is unable to pay and is not likely to become able to pay any fine").

**A. The Nature, Circumstances, and Seriousness of the Offense**

The requested sentence to be imposed should reflect the nature and seriousness of the defendant's conspiracy to commit an armed bank robbery. The seriousness of this crime is reflected in the sentencing enhancements applied in this case—namely, that the defendant intended to use firearms to commit the robbery, and that the defendant intended to rob a financial institution.

As an initial matter, bank robbery, whether armed or unarmed, is a crime of violence and may subject a defendant to sentencing enhancements in other contexts. *See Killion v. United States*, 728 F. App'x 19, 21 (2d Cir. 2018) (holding that federal armed bank robbery was a "violent felony" under Armed Career Criminal Act); *United States v. Chimurenga*, 760 F.2d 400 (2d Cir. 1985) (Under Bail Reform Act allowing pretrial detention of defendant charged with "crime of violence," holding that conspiracy to commit armed robbery is "crime of violence"); *Young v. United States*,

22 F.4th 1115, 1123 (9th Cir. 2022) ("aiding and abetting a crime of violence, such as armed bank robbery, is also a crime of violence"). Those enhanced penalties reflect the reality of the dangers that an armed bank robbery poses, including a significant risk of injury to innocent bystanders being held at gun point to rob a bank. Here, the defendant and his conspirators contemplated using knives and firearms, including potentially grenades, to intimidate and coerce, and potentially even restrain, employees at the Community Bank in Johnstown to steal money. Though the entire conspiracy lasted less than a month before it was cut short, each of the defendants took overt acts and concrete steps towards accomplishing the conspiracy's objective. For Brown, that was reflected in his trip up to New York on November 26, 2022. PSIR ¶¶ 25, 52.

The defendant's shared neo-Nazi and white supremacist ideology with his conspirators contributed to the offense and highlights his danger to the community, even if Brown has now disavowed and ceased all contact with those extremist groups and ideologies; his affiliation with those ideologies led to his participation in this offense, as he readily admits. PSIR ¶¶ 60-62 (noting that he "fell into it" and regrets his decision that led to his involvement with people of that nature). Those extremist white supremacist ideologies create a dangerous environment and have been deemed the "most lethal terrorist threat to our homeland today" as the "intelligence community has assessed that domestic racially and ethnically motivated violent extremist groups, which advocate for the superiority of the White race, have, 'the most persistent and concerning transnational connections' of all U.S. domestic violent extremists." *Racially and Ethnically Motivated Violent Extremism: The Transnational Threat, Before the H. Sub. Comm. on Intel. and Counterterrorism of the Comm. On Homeland Sec.*, 117th Cong. 1 (2021) (statement of Hon. Elissa Slotkin, Rep. from State of Mich.). While the offense conduct was not a hate crime, was apparently not racially motivated, nor was it intended to further Brown (or his conspirators') right

5

wing agenda or extremist views, the dangerousness that such extremist groups pose to our community underscores the seriousness and danger of the entire scheme. PSIR ¶ 61.

Admittedly, the defendant had a comparatively less involved role in the conspiracy than Kenna, though Brown took the initiative to drive from Pennsylvania to conduct surveillance with Kenna on November 26, 2022, and had the necessary items to assist and accomplish the robbery with his conspirators. PSIR ¶¶ 52, 54-55. Regardless of his role or his motivations, Brown posed a significant danger to society by organizing an armed bank robbery, which posed a significant danger to the community based on the risk of injury to innocent bystanders by the planned use of firearms, and which was purely motivated by greed. Such a violent felony, albeit an uncompleted conspiracy, is one that should be merit with serious consequences and merits a Guideline sentence.

B. The History and Characteristics of the Defendant

The defendant's criminal history—with several prior misdemeanors—indicates that he does pose some risk of recidivism following his prison term. PSIR ¶¶ 79-83. Though it is no longer reflected in his criminal history score after the Guidelines Amendments that became effective in November 2023, the defendant also committed the instant offense while on probation in Pennsylvania. PSIR ¶ 89. His violation of the court's trust warrants an extended period of post-imprisonment supervision to ensure that the defendant complies and receives the needed support, training, and care he needs to reenter society. Indeed, the defendant was a prohibited person at the time of his participation in the conspiracy and was not permitted to even have the ammunition that the FBI found in his possession.[3] PSIR ¶¶ 54-55. Admittedly, the defendant's track record since

---

[3] Brown's two prior misdemeanor convictions are punishable by a term of imprisonment greater than one year. *See* PSIR ¶ 83. Stalking is graded as a misdemeanor of the first degree in Pennsylvania, which carries a maximum penalty of five years in prison. 18 Pa. Cons. Stat. §§ 2709.1, 923(a)(7). Simple assault is graded as a misdemeanor of the second degree in Pennsylvania and carries a maximum penalty of two years in prison. 18 Pa. Cons. Stat. §§ 2702, 923(a)(6). So, Brown was prohibited from possessing firearms at the time of the instant offense.

his arrest, as confirmed by the numerous letters filed by employees of the Rensselaer County Jail in his support, *see, e.g.*, Dkt. 100, suggest that he has made significant contributions in the correctional setting, may mitigate that risk of recidivism, and advise that a low-end Guideline sentence may be more appropriate under these circumstances.

### C. Respect for the Law, Just Punishment, and Deterrence

A Guideline term of imprisonment will also promote respect for the law, provide just punishment, and provide both specific deterrence to the defendant and general deterrence to the population at large. *See* 18 U.S.C. § 3553(a)(2). The requested sentence will serve as a general deterrent to those who attempt to commit bank robberies and to possess firearms while prohibited from doing so. Those would-be criminals need to know that they cannot conspire to commit a dangerous armed bank robbery without being met with significant consequences.

It will also serve as a specific deterrent to protect the public from the future crimes that Brown would commit. If not for his arrest, Brown likely would have gone through with the bank robbery in January 2023—even as a contemplated "war game" or training exercise—causing significant financial losses to the bank, as well as instilling fear, terror, and potentially other injuries to the victimized bank tellers and witnesses, as well as the significant resources from law enforcement that would have been devoted to identifying the perpetrators.

A guideline prison sentence also reflects the appropriate sentencing range established by the Sentencing Guidelines and avoids unwarranted sentencing disparities among defendants. "[I]n the ordinary case, the Commission's recommendation of a sentencing range will reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Kimbrough v. United States*, 552 U.S. 85, 89 (2007); *see Gall v. United States*, 552 U.S. 38, 46 (2007) (noting that the guidelines are "the product of careful study based on extensive empirical evidence derived from

the review of thousands of individual sentencing decisions"). Moreover, within-Guidelines sentences promote Congress's goal in enacting the Sentencing Reform Act: "to diminish unwarranted sentencing disparity." *Rita v. United States*, 551 U.S. 338, 354 (2007).

Those guidelines have been used and deemed reasonable by other federal courts, including in the Northern District of New York, in sentencing other defendants for similar firearms and robbery offenses. *See, e.g.*, *United States v. Walls*, 1:19-cr-00279-MAD, ECF No. 257 (N.D.N.Y. Jan. 17, 2024) (sentencing defendant within the applicable Guidelines for armed bank robbery conspiracy); *United States v. Workman*, 5:21-CR-133 (GTS) (N.D.N.Y. Feb. 10, 2022), ECF No. 48 (imposing a Guideline sentence for possession of a firearm as a prohibited person on a defendant with white supremacist affiliations). The Court should avoid disparity among defendants and sentence Brown to a low-end Guideline sentence commensurate with his involvement in the crime.

### IV.    CONCLUSION

Given the nature and characteristics of this offense involving a conspiracy to commit an armed bank robbery, the United States recommends that the Court impose a sentence according to the Sentencing Guidelines, that includes a low-end Guideline term of imprisonment followed by three years of supervised release.

### V.    RESERVATION OF RIGHTS

The United States reserves the right to respond to arguments raised after this filing. Similarly, if the Court is considering a departure from the applicable Guidelines range on grounds not previously identified, the parties are entitled to notice and an opportunity to respond. Fed R. Crim. P. 32. The United States also requests that the Court provide the parties with any *ex parte* communications received by the Court in connection with sentencing, except for the confidential sentencing recommendations submitted by the United States Probation Office.

Dated: May 31, 2024                    Respectfully submitted,

                                              CARLA B. FREEDMAN
                                              United States Attorney

                              By:   */s/ Alexander P. Wentworth-Ping*
                                              Alexander P. Wentworth-Ping
                                              Assistant United States Attorney
                                              Bar Roll No. 701897